UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Leslie M. Shankle, | ) | |
| | ) | No. 12 C 6923 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| Village of Melrose Park, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Leslie Shankle works for the Village of Melrose Park (the "Village") Police Department ("Police Department"). Shankle sued the Village and four supervisors—Police Chief Sam Pitassi, Sergeant Mark Rieger, Lieutenant Steve Rogowski, and Lieutenant Michael Sarni—alleging discrimination, hostile work environment, and retaliation related to her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. Shankle also alleges that Defendants violated her civil rights under 42 U.S.C. § 1983 by denying her due process and equal protection. Presently before the Court is Defendants' partial motion to dismiss and strike Shankle's complaint. R. 10. For the reasons explained below, Defendants' motion is granted in part and denied in part.

**Background**[1]

Shankle began working for the Police Department full time in 1999. Previously, Shankle served four years in the United States Navy. She is currently a

---

[1] The following background is taken from the allegations in Shankle's complaint, R. 1, which the Court accepts as true for purposes of a motion to dismiss.

1

police officer assigned patrol duties. The Police Department employs approximately 75 officers. Shankle is the only female and the only openly gay officer. At some point, one other woman graduated from the academy and tried to join the Police Department; she was not hired or allowed to engage in field training.

Sometime in 2011, the Police Department slotted Shankle in fourth place on its promotion list. She has more time and/or education than males placed above her and is supposed to gain additional points for military service. Separately, Shankle sought an Evidence Technician position but was denied. Defendants also denied Shankle opportunities to enroll in other certification courses. In each case, Shankle alleges that she was discriminated against because of her gender.

On August 9, 2011, Shankle filed a charge of discrimination with the EEOC. Shankle's EEOC charge alleged that:

> I was hired by Respondent on or about March 1, 1999. My most current position is Police Officer. During my employment, I have been passed over for promotion, whereas less qualified, male employees have not. I have been denied training.
>
> I believe I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

R. 11-1.[2]

---

[2] In her complaint (at ¶ 19), Shankle paraphrases the allegations in her EEOC charge (somewhat generously, as discussed below), but does not attach the charge itself. This does not prevent the Court from considering the actual EEOC charge on a motion to dismiss. The EEOC charge is referenced in Shankle's complaint and is central to her claims. *See, e.g., Flood v. Wash. Square Rest., Inc.*, 2012 WL 5996345, at *2 n.1 (N.D. Ill. Nov. 30, 2012) (considering an EEOC charge on a motion to dismiss even though it was not attached to the complaint); *Smith v. Rosebud*

After Shankle filed her EEOC charge, the Police Department froze all promotions. It was made known that the freeze was because of Shankle. Pitassi and Sarni subsequently disciplined Shankle for allegedly missing a traffic court date and improperly operating her personal vehicle. For each event, Shankle was suspended one day without pay. The Village, Pitassi, and Sarni all either denied or discouraged Shankle's requests to appeal those determinations.

Although she was twice suspended without pay, Shankle alleges that male officers escaped discipline for more egregious behavior:

- An officer left his keys in a marked police car, which was then stolen and not reported until the Illinois State Police notified the Police Department that one of its cars was traveling at a high rate of speed on an expressway.

- An officer negligently discharged his weapon, striking and damaging his car, and then tried to hide the damage by using car parts retrieved from a junk yard.

- Officers improperly removed shell casings from a crime scene.

- Two officers, while drunk, stole, destroyed, and hid a golf cart.

- An officer was involved in a hit-and-run accident with a pedestrian.

- In a dispute with a prostitute, an officer made a 911 call to enlist the assistance of other officers to force the prostitute to return $100.

- To help a friend, an officer filed a false police report claiming that a car accident had occurred in the Village, when it happened elsewhere.

On or about October 31, 2011, Shankle amended her EEOC charge to allege retaliation. The amended EEOC charge alleged that:

---

*Farmstand*, 2012 WL 5562769, at *2 (N.D. Ill. Nov. 15, 2012) (same); *Graham v. United Postal Service*, 519 F. Supp. 2d 801, 805 (N.D. Ill. 2007) (same).

> I was hired by Respondent on or about March 1, 1999. My most current position is Police Officer. During my employment, I have been passed over for promotion, whereas less qualified, male employees have not. I have been denied training. On or about August 9, 2011, I filed the instant charge. Subsequently, I have been disciplined or suspended.
>
> I believe I have been discriminated against because of my sex, female, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

R. 11-2.

Shankle also alleges that in 2011, she experienced difficulties at work related to her sexual orientation. Rieger and Rogowski made gay jokes in her presence. Rogowski also compared homosexuals to pedophiles, and said that Shankle was "like a criminal" due to her sexual orientation. Someone placed a document referencing a gay dating website on a bulletin board as a purported joke, and other officers wrote offensive comments on the document. Shankle complained to Pitassi and Sarni, but they did nothing and allowed the behavior to continue.

On August 28, 2012, after receiving a right to sue letter from the EEOC, Shankle filed her complaint in this case. The complaint contains six counts: (1) Title VII gender discrimination; (2) Title VII hostile work environment based on Shankle's gender and her opposition to unlawful discrimination; (3) Title VII unlawful retaliation; (4) 42 U.S.C. § 1983 deprivation of due process under the Fourteenth Amendment; (5) 42 U.S.C. § 1983 violation of equal protection under the Fourteenth Amendment; and (6) 42 U.S.C. § 1983 *Monell* liability. Counts I, II, and III are against the Village and Pitassi, Rieger, Rogowski, and Sarni in their official

4

capacities. Counts IV and V are against the Village and Pitassi, Rieger, Rogowski, and Sarni in their individual capacities. Count VI is against the Village.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

## Analysis

### Count II – Hostile Work Environment, 42 U.S.C. § 2000e-3(a)

In Count II, Shankle alleges that Defendants violated Title VII, 42 U.S.C. § 2000e-3(a), by creating, fostering, and allowing a hostile work environment "because of Shankle's female gender, because [she] opposed unlawful discrimination . . ., and because [she] participated in the administrative process of enforcing the

5

prohibitions against employment discrimination." Compl. ¶ 42. Defendants argue that Shankle failed to exhaust her administrative remedies because a hostile work environment claim is beyond the scope of her EEOC charge. The Court agrees.

"Generally, a plaintiff may not bring claims under Title VII that were not originally included in the charges made to the EEOC." *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256-57 (7th Cir. 2011) (quoting *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003)). This rule serves two purposes: "affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion," and "giving the employ[er] some warning of the conduct about which the employee is aggrieved." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). A plaintiff does have "significant leeway," however, and may pursue Title VII claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc)).

But a plaintiff's leeway is not unlimited. A Title VII claim is considered "like or reasonably related" to a plaintiff's allegations in her EEOC charge only if "there is a factual relationship between them. This means that the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek*, 31 F.3d at 501 (emphasis in original). Moreover, "[b]ecause an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex

6

discrimination." *Id.* And "[o]rdinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination." *Id.* at 503. Thus, courts in this District have held that allegations of discrimination in an EEOC charge are not like or reasonably related to hostile work environment harassment claims. *E.g., Huri v. Circuit Court of Cook County*, 2012 WL 1431268, at *2-3 (N.D. Ill. Apr. 25, 2012) ("Huri alleged in the EEOC Charges that she was discriminated against because of her religion and national origin. Although Huri made limited references in the EEOC Charges to alleged harassment, Huri presented no allegations that would suggest that her work environment included harassment that was so severe or pervasive that it altered the conditions of her employment."); *Gbur v. City of Harvey*, 835 F. Supp. 2d 600, 624-26 (N.D. Ill. 2011) ("Mr. Gbur's discriminatory rehiring and hostile work environment claims are not based on the same conduct as his charges that he was denied promotions and received worse disciplinary treatment . . . than African-American officers.").

So it is here. In her EEOC charges, Shankle alleged only that she was denied promotions and training because of her gender and that she was retaliated against for filing her original charge. Shankle's EEOC charges say nothing about alleged sexual harassment or a hostile work environment. Tellingly, in her complaint, Shankle tries to transform her EEOC charges by loosely paraphrasing their allegations as relating to "discrimination as to employment opportunities and work environment." Compl. ¶ 19. But Shankle's EEOC charges make no reference to a hostile work environment. In response to Defendants' motion to dismiss, Shankle

also argues in conclusory fashion that her complaint "is clear that all the complained-of conduct took place at the hands of the complained-of Defendants, and that it is related to the gender discrimination." R. 14 at 8. But this argument ignores the case law in the Seventh Circuit that discrimination and hostile work environment claims ordinarily are not reasonably related, and Shankle offers no authority or argument for why this case should be different. The Court therefore finds that Shankle failed to exhaust her administrative remedies for a hostile work environment claim. Defendants' motion to dismiss Count II is granted.

**Counts I & III – Title VII Official Capacity Claims**

In her remaining Title VII claims (Counts I and III), Shankle seeks relief against both the Village and the individual defendants in their official capacities. Defendants argue that Shankle's official-capacity claims against the individual defendants are redundant of her claims against the Village and should be dismissed. In her response, Shankle agrees to dismiss the individual defendants from her Title VII claims. R. 14 at 12. The Court therefore grants Defendants' motion to dismiss the individual defendants from Counts I and III. Shankle's gender discrimination and retaliation claims will proceed against the Village.

**Counts IV & V – Individual-Capacity Claims Against Rieger and Rogowski**

In Count IV, Shankle alleges that Defendants violated her due process rights when she was twice suspended without pay. In Count V, Shankle alleges that Defendants violated her equal protection rights by disciplining her more harshly than her male counterparts. Defendants argue that Shankle has not alleged that

Rieger and Rogowski personally participated in those actions, and that as a result, the individual-capacity claims against them should be dismissed.

The Court agrees. Shankle's complaint contains only two factual allegations against Rieger or Rogowski. First, Shankle alleges that:

> In 2011, the work environment became openly hostile to Shankle as to her sexual orientation. Highly offensive "gay jokes" were made around her by Rieger and Rogowski. Rogowski openly in front of Shankle compared homosexuals to pedophiles, and said Shankle was "like a criminal" due to her sexual orientation.

Compl. ¶ 15. Second, Shankle alleges that:

> The Defendants (in particular Rieger) continue to deny Shankle opportunities to act as an Evidence Technician and to enroll in other certification courses.

*Id.* ¶ 33. Notably, neither factual allegation has anything to do with the issue in Counts IV and V: the decision to discipline Shankle for allegedly missing a traffic court date and improperly operating her personal vehicle. Indeed, Shankle readily concedes that "Reiger and Rogowski are not alleged to be part of the disciplinary actions." R. 14 at 11. Defendants' motion to dismiss Shankle's individual-capacity claims against Rieger or Rogowski is therefore granted.

In her response, Shankle attempts to broaden her § 1983 claims by arguing that Rieger and Rogowski "were involved in blocking her advancement on the basis of gender" and were therefore "personally involved in the denial of Shankle's rights." R. 14 at 12. But Counts IV and V were clearly limited to the disciplinary decisions. *E.g.,* Compl. ¶¶ 52, 56-57. If Shankle wishes to amend her complaint to assert a § 1983 claim on this alternative basis, she may seek leave to do so. The

9

Court expresses no opinion on that claim at this stage, other than to note that the current complaint does not contain sufficient factual allegations to plausibly support this alternate theory. Paragraph 33 of the complaint says nothing at all about Rogowski's involvement in denying Shankle employment opportunities and contains only a conclusory allegation against Rieger. To state a § 1983 claim against Rieger or Rogowski, or any individual defendant, Shankle would have to plead sufficient factual matter to state a plausible claim against them.

**Count VI – *Monell* Liability**

In Count VI, Shankle alleges that the Village is liable for alleged due process and equal protection violations under 42 U.S.C. § 1983. Although "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory," *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978), a municipality may be liable "if its officers acted pursuant to (1) an official policy; (2) a practice or custom that although not officially authorized, was widespread and well settled; or (3) instructions from a city official with final policy-making authority." *Gonzalez v. Vill. of W. Milwaukee*, 671 F.3d 649, 664 (7th Cir. 2012).

Defendants argue that Shankle's *Monell* claim against the Village fails to state a plausible claim under *Iqbal* and *Twombly*. The Court disagrees. For example, Shankle has provided numerous examples of male employees escaping discipline for more egregious misconduct than the issues that led to her two suspensions. Compl. ¶ 31. At least at the pleading stage, Shankle has sufficiently alleged a widespread practice or custom that supports her due process and equal

protection claims against the Village. Moreover, Shankle alleges that Police Chief Pitassi—who may have had final policy-making authority—was intimately involved in the alleged constitutional violations. Compl. ¶¶ 16, 17, 24-27, 35. A motion to dismiss does not address the merits of a complaint, and the Court cannot say at this early stage that Shankle does not have a plausible *Monell* claim against the Village. Defendants' motion to dismiss Count VI is therefore denied.[3]

**Punitive Damages Against the Village**

In Counts I through V, Shankle seeks punitive damages from the Village. As Defendants note, however, 745 ILCS 10/2-102 provides that "a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party." In her response, Shankle concedes this point. R. 14 at 12. The Court therefore grants Defendants' motion to dismiss Shankle's claim for punitive damages from the Village.

**Motion to Strike**

Defendants also move to strike the hostile work environment and sexual orientation allegations in the Complaint as immaterial, impertinent, or scandalous. Shankle responds that: (1) her hostile work environment allegations are relevant to Count II (this argument is now moot, as this Order dismisses Count II); (2) she is currently pursuing her sexual orientation claims before the Illinois Department of

---

[3] Count VI does appear to be somewhat duplicative of Counts IV and V, which already seek to hold the Village liable under § 1983. *See, e.g., Kole v. Village of Norridge*, 2013 WL 1707951, at *19 (N.D. Ill. Apr. 19, 2013); *Second Amendment Arms v. City of Chicago*, 2012 WL 4464900, at *10-11 (N.D. Ill. Sept. 25, 2012). But this potential duplication does not appear to present any material concern here.

Human Rights ("IDHR") and intends to seek leave to amend her Complaint once those proceedings conclude; and (3) the allegations help demonstrate a complete factual background, even if not as a discrete claim.

In light of the pending IDHR proceedings, Defendants' motion to strike is denied without prejudice. Defendants may raise this issue again if Shankle does not promptly seek leave to amend her complaint at the conclusion of the IDHR proceedings, or if the proceedings remain unresolved deeper into this case. At this early stage of the litigation, Defendants' concerns about being placed "in an unflattering light before the trier of fact" (R. 15 at 4) are premature.

## Conclusion

For the foregoing reasons, Defendants' partial motion to dismiss and strike Shankle's complaint, R. 10, is granted in part and denied in part.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: April 30, 2013